IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-01149-WYD

C. ELI-JAH HAKEEM MUHAMMAD, a.k.a. CHRISTOPHER MITCHELL,

    Applicant,

v.

R. WILEY, ADX Warden,

    Respondent.

ORDER OF DISMISSAL

I. Background

    Applicant C. Eli-jah Hakeem Muhammad, a.k.a. Christopher Mitchell, is in the custody of the United States Bureau of Prisons (BOP) at ADX Florence. Applicant initiated this action by filing a *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 challenging a prison disciplinary conviction in Incident Report (IR) No. 1622516. Upon initial review of Application, pursuant to D.C.COLO.CivR 8.1C., Senior Judge Zita L. Weinshienk determined that of the nine claims Applicant had raised only Claims Two, Three, Four, Five, Six, and Seven, to the extent that the claims raise due process violations under *Wolff v. McDonnell*, 418 U.S. 539 (1974), were properly before the Court in a § 2241 action. Subsequently, the action and the remaining claims were assigned to me pursuant to D.C.COLO.LCivR 40.1C.1.

    Upon review of the remaining claims, and finding good cause, I directed Respondent to answer and show cause why the Application should not be granted as to

these claims.  On October 30, 2008, Respondent filed an Answer.  Applicant filed a Reply on December 12, 2008.

The remaining claims before me include: (1) insufficient evidence to charge Applicant with a disciplinary infraction; (2) denial of due process by the Disciplinary Hearing Officer (DHO) when he waived Applicant's request to staff representation at the disciplinary hearing; (3) denial of due process by the DHO when he waived Applicant's request for a witness; (4) denial of due process by the DHO when he denied Applicant's request for video tapes as documentary evidence; and 5) a protected liberty interest in the fourteen days of accrued good-conduct time credits that were forfeited as a result of the disciplinary action at issue.  As relief, Applicant seeks expungement of the incident from his disciplinary record and reinstatement of the lost good-conduct time credits and the ability to earn credits.

II.  Analysis

I must construe the Application liberally because Applicant is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  If the Application reasonably can be read "to state a valid claim on which the [applicant] could prevail, [a court] should do so despite the [applicant's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110.  However, I should not act as a *pro se* litigant's advocate.  *See id.*

As a federal prisoner, Applicant has a constitutionally protected liberty interest in

his earned good-conduct time.  *See Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987).  Therefore, he was entitled to due process at the disciplinary hearing in question.  However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff*, 418 U.S. at 556.  Instead, adequate due process at a prison disciplinary hearing requires only that a prisoner be provided with written notice of the charges against him no less than twenty-four hours in advance of the disciplinary hearing, an opportunity to call witnesses and present documentary evidence in his defense if doing so would not be unduly hazardous to institutional safety or correctional goals, and a written statement by the factfinders of the reasons for the decision and the evidence on which they relied.  *See id.* at 563-66; *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990).  There also must be some evidence to support a disciplinary conviction.  *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).

"Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at 455-56; *see Mitchell*, 80 F.3d at 1445.  The disciplinary decision will be upheld even if the evidence supporting the decision is "meager."  *Mitchell*, 80 F.3d at 1445 (citing *Hill*, 472 U.S. at 457).

Constitutionally adequate due process at a prison disciplinary hearing does not

require that an applicant be informed of every detail of the charges against him so that he can prepare what in his opinion is the best defense. It only requires that the applicant be informed of the charges to enable him to marshal the facts and prepare a defense. *Wolff*, 418 U.S. at 564.

### 1. Insufficient Evidence

Applicant asserts that there was insufficient evidence to support the adverse decision in his disciplinary proceeding and to find that he refused to accept a program assignment. (Application (Doc. # 2) at 6.)[1] Applicant contends that his actions were not "unlawful" because ordering an inmate to his cell is not a program assignment. (Application at 6.) Applicant further asserts in his written statement to the DHO that while he was participating in recreation he observed BOP Officer R. Madison enter Applicant's cell and leave with items that were Applicant's personal property. (Decl. (Doc. # 3) at 9.) After viewing the incident and prior to recreation ending, Applicant contends that he asked other BOP officers to take him to the Special Housing Unit (SHU), because he could not remain in the same housing unit with Mr. Madison due to Mr. Madison's retaliation against and harassment of Applicant. (Decl. at 9.) Applicant also asserts that when recreation ended he "cuffed-up," voluntarily left recreation without any problems, and was placed in the SHU as he had requested. (Decl. at 10.) Applicant contends, in his Brief in Opposition (Reply), that the "some evidence" standard was not met because he could not have known that requesting placement in the SHU was a BOP code violation. (Reply (Doc. # 17) at 9.) He further asserts that he

---

[1] Page numbers referred to in citations to documents filed in this case are the page numbers identified by the Court's Electronic Court Filing system.

was punished for exercising his constitutional right to "speak-out" to stop the "ongoing patterns of severe and pervasive staff-misconducts" against him and to request voluntary protective custody.  (Reply at 9.)

In response to Applicant's claim, Respondent argues that failure to accept a program assignment is a broader violation than Applicant asserts, and a ''program" is a broad term that encompasses placement in the system and the institution.  (Answer (Doc. # 14) at 26-27.)  Respondent further argues that Applicant acknowledged his assignment at the time of the incident because he stated he would not return to general population where he was housed and would have to be taken to the SHU. (Answer at 27.)

First, I find that Respondent's definition of program assignment to be reasonable and that Applicant was aware his current living assignment was general population.  Second, Applicant's claim that he could not have known that requesting placement in the SHU was a violation simply disregards his actions.  Even if Applicant requested to go to the SHU, as he asserts, seeking voluntary protective custody due to Mr. Madison's acts, the basis for such a request is meritless.  Applicant asserts that Mr. Madison had entered his cell when he was participating in recreation and had taken his personal property and that Mr. Madison continually harasses and retaliates against him.  Neither of these claims would support protective custody placement under 28 C.F.R. § 541.23.

Second, there is no Fourth Amendment right against an unreasonable search and seizures of a prisoner's cell.  *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

Applicant, therefore, does not have a subjective expectation of privacy in his cell.

Third, "mere allegations of constitutional retaliation will not suffice; [applicants] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *See Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see also, Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (A plaintiff must demonstrate that " 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place.")  Applicant's retaliation claims are vague and conclusory.  Moreover, Applicant was not disciplined in retaliation for exercising his constitutional rights.  I know of no legal authority suggesting that an inmate has a constitutional right to refuse to return to an assigned cell simply because a prison officer had entered his cell and removed personal property in an alleged act of retaliation and harassment.  Applicant has other authorized BOP procedures available to him to challenge his claims of retaliation and harassment.

I also note that Applicant's claims of retaliation and harassment against Mr. Madison have been raised before.  Applicant claimed harassment and retaliation by Mr. Madison in two previous actions, but the claims were found simply to be efforts by prison staff to enforce prison regulations. *See Muhammad v. Collins, et al.*, No. 06-cv-00756-ZLW at Doc. # 20 (D. Colo. Dec. 18, 2006), *aff'd* No. 07-1010 (10th Cir. July 17, 2007); *See Muhammad v. U.S.*, No. 07-cv-01808-WYD-BNB at Doc. # 31 (D. Colo. entered Apr. 8, 2008) (case is pending).

In support of the guilty finding, the DHO relied on (1) the reporting staff member's direct eyewitness account of the events, including that Applicant would not leave

6

recreation when ordered to cuff-up and return to his cell; (2) Applicant's statement admitting the culpability that he would not return to general population; and (3) a memorandum from a second staff member who witnessed the incident and corroborated the reporting staff member's eyewitness account. (Answer, Attach. 6 at 2.) Although Applicant asserts in the Declaration (Decl. at 10) he submitted with his Application that neither the reporting staff member nor the second staff member told him to cuff-up, the statement alone is self-serving and is not supported by any corroborating evidence. I, therefore, find some evidence to merit the DHO's finding that Applicant violated Code 306 when he refused to return to his cell in general population, and Applicant's due process rights were not violated by the DHO's findings.

    2. Denial of Staff Representation

*Wolff* provides no right to assistance from a staff representative during the disciplinary process, including any assistance from a prison staff member who would help an inmate develop a defense, and who would become familiar with all evidence relative to the proceeding, as Applicant suggests. *Wolff*, 418 U.S. at 570 (The Supreme Court refrained from holding that inmates have a right to either retained or appointed counsel in disciplinary proceedings.). I also note that Applicant is not illiterate, and the issues involved in the disciplinary hearing are not complex. Two issues that could give rise to the need for representation. *Id.*

Nonetheless, even if I were to find that representation was necessary, Applicant does not provide evidence to support his claim that the DHO denied his request for staff representation. In the Application, Applicant states that he requested staff

representation for his DHO hearing at the time of his Unit Disciplinary Committee (UDC) hearing. (Application at 4.) Applicant also states in the Declaration he submitted with his Application that Staff Representative S.O. Abraham would verify that Applicant did in fact request to be placed in the SHU before the recreation period was over. (Decl. at 11.)

Neither Applicant's request for a staff representative at the UDC hearing, nor a a staff representative's statement regarding Applicant's comments made prior to the end of recreation about his desire to be placed in the SHU and not to return to his cell, would provide evidence that the DHO denied Applicant's request at the DHO hearing to have staff representation. As Respondent has noted, (Answer at 20-21) Applicant's claim that the DHO "waived" his request for a staff representative does not support a finding that the DHO denied Applicant's request for a staff representative. Nothing in the Application or Reply indicates that Applicant requested a staff representative during the DHO hearing and the DHO denied his request. Applicant, therefore, fails to assert that his due process rights were violated when he proceeded with his disciplinary proceeding, in IR No. 1622516, without staff representation.

### 3. Denial of Witness

Applicant contends that at the UDC hearing, and in a written statement to the DHO, he requested to have an inmate witness who would verify that he was having problems with Mr. Madison regarding his personal property, legal copies, retaliation, and harassment. (Application at 5 and Decl. at 11.) Nothing in the testimony that Applicant asserts the inmate would have been able to provide disproves that Applicant

refused to return to his cell in general population on the date the disciplinary infraction took place. Applicant, therefore, fails to show how the testimony by the identified inmate would have affected the outcome of his disciplinary hearing. *Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993).

Although prison officials must consider an inmate's request to call a witness on an individual basis, errors in denying witness testimony are subject to a harmless error review. *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007) (citations omitted). Even if the DHO had denied Applicant's request for a witness at the hearing, the denial at best is a harmless error, and I find no violation of Applicant's due process by the denial. Applicant, therefore, fails to assert that his due process rights were violated when he proceeded with the disciplinary hearing without an witness providing testimony on his behalf.

### 4. Denial of Video Tapes

Applicant asserts that the DHO denied and waived his request for a surveillance tape of A-1 range, apparently the range where the incident in question in his disciplinary action took place, as documentary evidence for his defense. (Application at 5.) Applicant asserts that the surveillance tape would have shown the times he talked with the reporting officer, and the second officer, prior to the end of recreation, and the conversations he had with both officers at the time recreation ended. (Decl. at 11-12.)

Nothing that Applicant asserts would be shown by the surveillance tape overcomes the fact that in his written statement to the DHO he states that he told the reporting staff member, and the second eyewitness staff member to the incident in

question, that he needed to talk with a lieutenant because he "refuse[d] to remaine [sic] in this unit with counselor Madison." (Decl. at 9.) Applicant does not assert that the reporting officer and the second officer agreed to his request. I, therefore, find that the surveillance tapes would not have shown any evidence exonerating Applicant of the charges of which he was found guilty, in that he admits he refused to return to his cell in general population. The denial of the surveillance tape, therefore, did not violate Applicant's due process rights.

### 5.  Liberty Interest in Good Conduct Time

To the extent Applicant has a liberty interest in his good-conduct time, he was not denied due process in the disciplinary proceeding that resulted in the loss of the time.

### III.  Conclusion

Based on the above findings, Applicant fails to assert a denial of his due process rights in his disciplinary proceeding, in IR No. 1622516. I, therefore, find that Applicant's claims lack merit. The action will be dismissed with prejudice on the merits. Accordingly, it is

ORDERED that the Application is DENIED and the action is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.

Dated: August 25, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge

Case 1:08-cv-01149-WYD   Document 19   Filed 08/25/09   USDC Colorado   Page 11 of 11